**PUBLIC OF the STATE OF INDIANA,** Illinois Commerce Commission, City of Garrett, Potomac Passengers Association and J. R. McNeal, Plaintiffs,

City of Chicago, Intervening Plaintiff,

v.

**UNITED STATES of America, Interstate** Commerce Commission and the Baltimore and Ohio Railroad Company, Defendants.

Civ. A. No. 70 F 4.

United States District Court,
N. D. Indiana,
Fort Wayne Division,
Jan. 18, 1971.

**1224**

---

Richard W. McLaren, Asst. Atty. Gen., William C. Lee, U. S. Atty., Fort Wayne, Ind., John H. D. Wigger, Atty., Dept. of Justice, Washington, D. C., for the United States.

Fritz R. Kahn, Gen. Counsel, Charles H. White, Jr., Atty., Interstate Commerce Comm., Washington, D. C., for the I. C. C.

Carl E. VanDorn, Public Counsellor, Indianapolis, Ind., William J. Scott, Atty. Gen., Peter A. Fasseas, Sp. Asst. Atty. Gen. of Ill., Richard L. Curry, Corp. Counsel, Mathias M. Mattern, Bernard Rane, Mark Goldstein, Asst. Corp. Counsel, Chicago, Ill., Nelson G. Grills, Indianapolis, Ind., Pierre E. Dostert, Gordon P. MacDougall, Washington, D. C., James D. Brinkerhoff, Jr., Garrett, Ind., for plaintiffs.

Leigh L. Hunt, Fort Wayne, Ind., Robert O. Smith, Jr., Baltimore, Md., for defendant.

Before KILEY, Circuit Judge, and ESCHBACH and BEAMER, District Judges.

## OPINION

KILEY, Circuit Judge.

Plaintiffs,[1] by virtue of 28 U.S.C. § 1336(a), seek to set aside a decision[2] of the Interstate Commerce Commission permitting discontinuance by the Baltimore and Ohio Railroad Company (B&O) of two trains, and changes in train schedules. We deny the petition.

Prior to the proposed discontinuance and changes, B&O Train No. 7 operated daily from Washington, D. C., leaving at 11:45 p. m., to Chicago, Illinois, arriving at 5:40 p. m. the next day. Train No. 10 operated daily from Chicago, leaving at 10:10 a. m., to Pittsburgh, Pennsylvania, arriving at 9:55 p. m. These are the trains subject of the discontinuance order.

Train No. 5 operated from Washington, D. C., leaving at 4:45 p. m., to Chicago, arriving at 9:10 a. m. the next day. Train No. 6 operated daily from Chicago, leaving at 3:40 p. m., to Washington, arriving at 9:25 a. m. the next day. As changed, the schedules would provide for Trains 5 and 6 to stop at

---

1. Plaintiffs are: Public of the State of Indiana, a public body entrusted with representing the State of Indiana in proceedings involving railroad passenger service; Illinois Commerce Commission, the duly-constituted regulatory agency for railroad passenger service for the State of Illinois; City of Garrett, Indiana; Potomac Passengers Association, a voluntary non-profit association of railroad commuters with its principal office in Washington, D. C.; and J. T. McNeal, Indiana Legislative Director for the United Transportation Union. The City of Chicago, Illinois was granted leave to intervene in this action.

2. *The Baltimore and Ohio Railroad Company Discontinuance of Trains Nos. 7 and 10 Between Chicago, Illinois, and Akron, Ohio, and Change of Service of Train No. 7 Between Washington, D. C., and Akron, Ohio, and Train No. 10 Between Akron, Ohio, and Pittsburgh, Pa.* 336 I.C.C. 340.

Deshler, Ohio, and Nappanee, Indiana, to pick up passengers formerly taken by Trains 7 and 10. And east of Akron, Ohio, Trains 7 and 10 would be rescheduled into a new through daylight service in which Train No. 7 would leave Washington at 8:05 a. m. and arrive in Akron at 6:45 p. m.; Train 10, together with Train 8, would leave Akron at 6:45 a. m. and arrive in Washington at 5:20 p. m. A new train, No. 17, would be added to service commuters between Washington, leaving at 9:00 p. m., and Cumberland, Maryland, arriving at 12:10 a. m. This proposed latter service would replace No. 7 service. These are the schedule changes subject of the Commission order.

After B&O served notice of discontinuance and schedule changes with the Commission, and protests developed, the Commission began an investigation while the existing trains and schedules were ordered continued pending decision. Public hearings were held in Illinois, Indiana, Ohio, Pennsylvania, and Washington, D. C. Thereafter the Commission found continued operation of Trains 7 and 10 between Chicago and Akron not required by public convenience and necessity, and that continuance would unduly burden interstate commerce, 336 I.C.C. at 357; and that public convenience and necessity permitted the proposed schedule changes between Akron and Washington, D. C. *Id.*

The proceeding before us followed. Judge Eschbach refused to enjoin enforcement of the order and requested empanelling of a three-judge court. This was ordered, and the three-judge court conducted a hearing on whether to set aside in whole or in part the Commission's order. 28 U.S.C. § 1336.

The main issue argued is whether there is in the record substantial evidence to support the Commission's finding that continued operation of Trains 7 and 10 between Chicago and Akron will unduly burden interstate commerce. Plaintiffs argued that because B&O declined to segregate revenues and expenses between Chicago and Akron there is no evidentiary basis for the necessary findings.

In arriving at its ultimate findings, the Commission considered, *inter alia,* the costs incurred and financial losses sustained by the carrier and the carrier's financial condition.[3] B&O presented evidence that its over-all operation had a net income for the years 1967 and 1968 and the first three months of 1969 of $14,164,436, $10,267,976, and $110,350, respectively. 336 I. C.C. at 348. For Trains 7 and 10, the carrier claimed net gains for the years 1967 and 1968 of $318,045 and $319,234, and a net out-of-pocket loss of $87,435 for the first six months of 1969.[4] *Id.* B&O also presented evidence comparing the revenue and expenses for operating the trains as then constituted and as proposed for the year 1970. The Commission found a prospective annual deficit for 1970 of approximately $174,000[5] if the trains were operated as then constituted, and a prospective profit of $303,069 if operated as proposed. Based on this evidence, the Commission concluded that "discontinuance of Trains Nos. 7 and 10, to the extent here involved, would be in the public interest." 336 I.C.C. at 356.

The critical decisional fact is that the Commission found on this evidence that B&O's continued operations of the two trains would result in operat-

3. The Commission also considered the population and the effect of the changes on the communities served, the extent of use by the public of the service to be discontinued and alternate available transportation services. 336 I.C.C. at 355 ff.

4. This decline in revenue was doubtless due to the decline in mail service and passenger use on these trains during the period in question. Mail service, which accounted for almost 78% of the trains' total revenue, declined from $1,707,156 in 1967 to a projected $947,679 in 1969; passengers for both trains declined from 157 passenger average per trip in 1967 to 116 in 1969.

5. This finding was made in a supplementary order of July 29, 1970.

ing deficits and that discontinuance would produce an improvement in B&O's income. See State of New York v. United States, 299 F.Supp. 989, 1001 (N.D.N.Y.1969), aff'd per curiam, 396 U.S. 281, 90 S.Ct. 545, 24 L.Ed.2d 462 (1970). The Commission was not required to determine how much of the projected deficit for Trains 7 and 10 was due to the Chicago-Akron link and what part was due to the Akron-Washington, D. C. segment. The only evidence required is that continued operation of the trains would result in operating deficits and that discontinuance of the Chicago-Akron segment, along with the rescheduling, would provide a substantial net benefit to the carriers.[6] Such evidence was presented by B&O and accepted by the Commission.[7]

■ Plaintiffs next argue that the Commission's decision with respect to the changes in schedule east of Akron should be set aside for failure to enter the quasi-jurisdictional finding that the existing schedules east of Akron are not required by public convenience and necessity and that their continuance would unduly burden interstate commerce. The Commission found the proposed changes are "permitted by public convenience and necessity" and plaintiffs contend that this ultimate finding falls short of the statutory requirement. We think the finding was sufficient.

Section 13a(1) of the Interstate Commerce Act, 49 U.S.C. § 13a(1), provides, in relevant part:

 * * * [If] the Commission finds that the operation or service of such train or ferry is required by public convenience and necessity and will not unduly burden interstate or foreign commerce, the Commission may by order require the continuance or restoration of operation or service of such train or ferry, in whole or in part, for a period not to exceed one year from the date of such order.

There is no requirement in Section 13a(1) that if the Commission concludes that the present operations or services of such trains are not required, it must find both that continuance of the existing schedule is not required by public convenience and necessity, and that continuance will unduly burden interstate commerce. All that is required is that the Commission find, with support in the record, that the continuation of services is not required by public convenience and necessity. If the continuation is not required by public convenience and necessity, there is no need to inquire into the burden on the carrier which proposed the changes. Here, the Commission found that the change in schedule is permitted by public convenience and necessity, and we think this finding is tantamount to a finding that the existing schedules are not required by public convenience and necessity.

■ We see no merit in the plaintiffs' argument that the Commission's discontinuance order should be set aside because it is based in part upon changes for Trains 5 and 6 over which the Commission did not obtain jurisdiction due to B&O's failure to post the statutory notice on the equipment on those trains. They argue that the addition of stops at

---

6. 49 C.R.F. § 1122.5 provides that the railroad should segregate the financial results of operating the trains between the stations involved "to the extent such information is available." The railroad argues that this information is not available since Akron is not a crew change point for train employees and most of the passenger traffic on the train at Akron has boarded east (or west) of Akron traveling to points west (or east) of Akron. It claims that the expenses and revenue for this segment of the train could only be calculated by a mathemat-

ical mileage pro-rata basis, which would simply fractionalize the projected $174,-000 deficit. Apparently the Commission agreed with the railroad, and we cannot say it should have disagreed.

7. Plaintiffs' suggestion that the Akron-Chicago portion of the line was profitable is contrary to the weight of the evidence since, as pointed out above, the discontinuance of that segment would remove the deficit incurred in operating Trains 7 and 10 and provide a net profit for the railroad.

Nappanee, Indiana and at Deshler, Ohio on Trains 5 and 6 is an essential element [8] of B&O's discontinuance proposal and therefore jurisdiction over these trains was necessary. But the Commission, while approving the proposals as to Trains 7 and 10, entered no order with respect to Trains 5 and 6, and the Commission's decision does not indicate that the addition of these two stops on Trains 5 and 6 was essential to the Commission's authorization of the Chicago-Akron discontinuances. Jurisdiction over these two trains was therefore not required.

■ Plaintiffs' final contention is that the Commission's order should be reversed because the financial condition of the Chesapeake and Ohio Railway Company (C&O), which owns 94% of B&O's preferred and common stock, was not made part of the record. This contention is equally without merit. Although "[p]iercing the corporate veil may be warranted in some situations, as for example where fraud and misleading representations are made or where some unlawfulness may be involved," Chicago & Eastern Illinois R. Co. Discontinuance of Trains, 331 I.C.C. 447 (1968), no question of fraud or unlawfulness is raised here. Moreover, the fact that C&O is profitable would not change any relevant fact in the case before us because B&O itself had a net income for the years 1967, 1968, and for the first three months of 1969 of $14,164,436, $10,267,976, and $110,350, respectively. The Commission in effect found the demands of public convenience and necessity to be slight, and therefore was not required to make an extended examination of B&O's over-all financial condition. See Southern R. Co. v. North Carolina, 376 U.S. 93, 105, 84 S.Ct. 564, 11 L.Ed.2d 541 (1963).

Accordingly, an order will be entered sustaining the Commission order and dismissing the complaint.

8. B&O's notice of discontinuance sets forth the addition of stops at Nappanee, Indiana and Deshler, Ohio on Trains 5 and 6 if Nos. 7 and 10 are discontinued. The addition of these stops is specifically mentioned at five places in the Commission's decision. See 336 I.C.C. at 344, 346, 351, 354 and 356.